*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0454p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CEDRIC IVORY,

> *Petitioner-Appellant,*

*v.*

ANDREW JACKSON, Warden,

> *Respondent-Appellee.*

Nos. 05-1672; 06-2294

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-71279—Victoria A. Roberts, District Judge.

Argued: September 17, 2007

Decided and Filed: November 15, 2007

Before: BATCHELDER and GILMAN, Circuit Judges; STAFFORD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Christina J. Moser, BAKER & HOSTETLER, Cleveland, Ohio, for Appellant. Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Christina J. Moser, Thomas D. Warren, Stephan J. Schlegelmilch, BAKER & HOSTETLER, Cleveland, Ohio, for Appellant. Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. In January of 1998, Cedric Ivory was charged with the murder of his girlfriend, Alanna Napier. Following a bench trial before a Michigan state court later that year, Ivory was convicted of second-degree murder and a related firearm offense. He was sentenced to a lengthy term of imprisonment on the two charges. Ivory then petitioned for state postconviction relief, but was turned down at all levels of the state judiciary. He subsequently filed a motion for federal habeas corpus relief, with his principal argument being that his trial counsel provided ineffective assistance due to counsel's addiction to drugs and alcohol. The district court determined that Ivory's ineffective-assistance-of-counsel claim was procedurally defaulted and, in

---

[*] The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

any event, without merit. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A.    Factual background**

*1.    Ivory's conviction*

The district court summarized the facts of Ivory's case as follows:

Petitioner's convictions stem from the shooting death of his girlfriend, Alanna Napier, on Ilene Street in Detroit, Michigan on July 28, 1996. At trial, Dwayne Glen testified that he was at his home on Ilene Street at 3:00 p.m. on July 28, 1996 when he heard a female voice say, "you want to fight, you want to fight." He looked outside and saw Napier walking on the sidewalk toward his home conversing with Petitioner who was following her in a burgundy Buick LaSabre. As they neared Glen's home, Petitioner got out of the car, took a few steps, and fired five to seven shots at Napier who fell to the ground. Petitioner was 10 to 12 feet from Napier when he fired the gun. Glen did not see Napier approach Petitioner or make threatening gestures toward him. He could not recall whether Napier had anything in her hands, but said she might have had a purse. After the shooting, Glen called 911 and went outside. Two other neighbors, Janet Edwards and William Carr, also came outside. Glen also testified that he recognized Petitioner and Napier from his place of employment, where they worked different shifts.

William Carr testified that he was at home on Ilene Street when he heard shooting outside his home. He looked outside and saw a woman lying on the ground. He went outside to help her and asked if she knew who shot her. She responded that it was Cedric Bernard Ivory. Mr. Carr also testified that the shooting caused damage to his home. The police investigated bullet holes in his windows, a bullet on his floor, and a bullet lodged in his wall.

Detroit Police Officer John Harvin testified that he investigated the shooting scene. When he arrived, he observed the victim lying on the ground. An anti-car theft "club" which was about 10 feet away from the victim and a woman's purse were taken into evidence.

The medical examiner's report indicated that Alanna Napier was 22 years old, was five feet five inches tall, and weighed 129 pounds at the time of her death. She died from two gunshot wounds–one to the face and one to the upper left buttock, which caused severe internal injuries. There was not evidence of close range firing. The manner of death was homicide.

The parties stipulated that Petitioner's mother, Pearl Ivory, would testify that Petitioner borrowed her burgundy Buick on the day of the shooting around noon and that he did not return home at 2:00 p.m. as expected. When she was outside her Ilene Street home around 3:00 p.m., she heard five or six gunshots from down the street. The police came to her home 20 minutes later and said they were looking for Petitioner in connection with the shooting. She knew Napier as her son's friend or girlfriend. Petitioner never returned home. The next day, she received a call from an unidentified male telling her where her car could be located.

Petitioner did not testify at trial, but his statement to police was read into the record. In that statement, Petitioner acknowledged shooting Napier, but claimed that he was provoked and/or that he acted in self-defense. Specifically, Petitioner stated that Napier had been his girlfriend for about one year before the shooting. On that day, he was driving in a burgundy Buick LaSabre with Napier, drinking and smoking marijuana, when they got into an argument and started hitting each other. Napier pulled out a gun and he took it from her. He then pulled the car over and put the gun in the trunk. He returned to the car. They began to argue again and she hit him with an anti-theft club. Petitioner pulled the car over and told Napier that he loved her. She responded that she did not love him and had given him AIDS. Petitioner then "lost it" and jumped out of the car. He did not know how many times he fired the gun at Napier or if she said anything before he shot her. Petitioner stated that he left the gun at the scene and fled in his car. Later that day, he learned that Napier had died. He left town two days later because he was confused and wanted to get money for a lawyer. He testified negative for AIDS in August or September, 1996.

At the close of trial, the court found Petitioner guilty of second-degree murder and felony firearm. In reaching this conclusion, the trial court relied upon the eyewitness testimony and rejected Petitioner's assertions of provocation and self-defense.

The trial court subsequently conducted a sentencing hearing. At that hearing, Petitioner raised no material objections to the pre-sentence report. The victim's mother (Mrs. Napier), brother (Mr. Jones), and grandmother (Mrs. Pierson) gave victim impact statements. Petitioner also made a statement. The trial court then sentenced Petitioner within the sentencing guidelines to a term of 20 to 40 years imprisonment on the murder conviction and a consecutive term of five years imprisonment on the firearm conviction.

*Ivory v. Jackson*, No. 04-CV-71279-DT, 2005 WL 1030325, *1-2 (E.D. Mich. April 27, 2005).

The bench trial lasted just three hours, and the state presented only three witnesses: Carr, Glen, and Officer Harvin. Joshua Gordon, Ivory's court-appointed attorney, cross-examined two of the state's witnesses, stipulated to the entry of several items of evidence (including Ivory's statement to the police), moved for a judgment of acquittal at the close of the state's case, and gave a closing argument.

In support of his present appeal, Ivory sets forth various facts concerning Gordon's preparation for trial and trial performance, as well as his counsel's personal history. The state trial-court record reflects that, on Gordon's advice, Ivory agreed to waive his right to a jury on the morning set for trial. Gordon also waived the opportunity to present an opening statement and called no witnesses on Ivory's behalf. Furthermore, Ivory complains that Gordon asked the state's witnesses only "a few questions." The transcript reveals that Gordon questioned both Carr and Glen, but neither cross-examination covers more than a few transcript pages. According to Ivory, Gordon "seemed to be under the influence of drugs or alcohol" during the trial.

Ivory also submitted an affidavit setting forth what he alleged to be Gordon's inadequate trial preparation. In his affidavit, Ivory asserted that Gordon met with him only twice in the months before trial, and that Gordon ignored Ivory's requests for updates, documents, and strategy discussions. According to Ivory, when Gordon did meet with him, Gordon appeared to be under the influence of drugs or alcohol, was dressed improperly, and asked Ivory for "something sweet to eat" or for "candy," which Ivory alleges are slang terms for drugs. Ivory also alleged that Gordon "told me that he was not going to call me to testify," but "did not discuss this with me." Similarly, Ivory

claimed that Gordon "told me that I was going to waive my right to a jury. I did as he told me, but I wish I hadn't."

### 2. *Gordon's disciplinary proceedings*

Unhappy with Gordon's allegedly ineffective assistance at trial, Ivory filed a grievance against Gordon with the Michigan Attorney Grievance Commission in September of 1998. Commission records, as it turns out, confirm that four other of Gordon's former clients had also filed grievances against him in the same time period. Counsel for Gordon conceded during the grievance proceedings that, due to heavy substance abuse, Gordon "simply gave up and stopped responding not only to the [Grievance] Commission, but also, pretty much, all the duties in his life." Furthermore, counsel commented that, during the relevant time period, Gordon "gave up his office and he had difficult personal living circumstances and became a bit of a vagabond for a while."

Gordon's addiction problems became sufficiently obvious to the Michigan Third Circuit trial judges before whom he practiced that 10 of them arranged an "intervention" for him in February of 2000. The judges at that time demanded that Gordon immediately enter an in-patient treatment program or face revocation of his Third Circuit criminal-practitioner certification. Ultimately, Gordon pled no contest to the disciplinary charges brought against him in connection with the grievances and received a 180-day suspension of his law license that began in March of 2001.

### B. Procedural background

Ivory, represented by newly appointed counsel Frederick Finn, timely appealed his conviction. Finn filed an appellate brief on behalf of Ivory in May of 1999, but the only issue raised was a claim that insufficient evidence supported Ivory's conviction. Thus, Finn did not raise the issue of ineffective assistance of trial counsel, nor did he request an evidentiary hearing despite the grievance that Ivory himself had filed against Gordon eight months earlier. The Michigan Court of Appeals affirmed Ivory's conviction. *People v. Ivory*, 2000 WL 33401851 (Mich. App. Nov. 17, 2000). His application for leave to appeal to the Michigan Supreme Court was also denied.

Ivory then initiated state postconviction proceedings by filing a pro se motion for relief from judgment. In November of 2002, the trial court denied Ivory's postconviction petition for relief on all grounds. Both the Michigan Court of Appeals and the Michigan Supreme Court summarily denied Ivory's postconviction appeals in one-sentence orders, citing Mich. Ct. Rule 6.508(D) (barring the court from granting relief under various circumstances, including procedural default).

Having exhausted his state court remedies, Ivory filed a timely pro se petition for federal habeas corpus relief with the United States District Court for the Eastern District of Michigan in April of 2004. His petition sought an evidentiary hearing and set forth the following five grounds for relief: (1) that insufficient evidence supported his conviction, (2) that the trial court erred when it found that Ivory had insufficient legal justification for the homicide, (3) that Ivory's presentence report contained incorrect information, (4) that irregularities occurred in connection with one of the victim-impact statements presented, and (5) that Ivory received the ineffective assistance of counsel both at trial and on direct appeal.

The district court denied Ivory's first two claims on the merits, and ruled that his final three claims were procedurally defaulted because Ivory had failed to raise them on direct appeal. *Ivory*, 2005 WL 1030325, at *7-9. Despite finding the final three claims procedurally barred, the court went on to determine that, even if it were to address the claims, it would deny each of them on the merits. *Id*. at *9-11. The court also denied Ivory's request for a Certificate of Appealability (COA). Ivory then appealed both the denial of his habeas petition and the denial of his motion for reconsideration of his ineffective-assistance-of-counsel claim. This court granted Ivory a blanket

COA as to all of his claims, but he has limited his appeal to the issues of whether his trial and appellate counsel were constitutionally ineffective.

## II. ANALYSIS

### A. Standard of review

In a habeas corpus appeal, we review the district court's legal conclusions de novo, but will not set aside its factual findings unless they are clearly erroneous. *Dyer v. Bowlen*, 465 F.3d 280, 283-84 (6th Cir. 2006). The standard for reviewing state-court determinations on habeas, by contrast, is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. § 2254(d). Under the AEDPA standard, a federal court

> may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . or (2) the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

*Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. § 2254(d)) (quotation marks omitted).

A state-court decision is considered "contrary to . . . clearly established federal law" if it is "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (quotation marks omitted). Alternatively, to be deemed an "unreasonable application of . . . clearly established Federal law," a state-court decision on the merits must be "objectively unreasonable," not simply erroneous or incorrect. *Id*. at 409-11. The state court's findings of fact are presumed to be correct unless they are rebutted by "clear and convincing evidence." *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007).

### B. Ivory's ineffective-assistance-of-trial-counsel claim is procedurally defaulted

As noted above, the district court determined that Ivory's claim regarding the alleged ineffective assistance of his trial counsel was procedurally defaulted. This court has adopted a four-part test to determine whether a claim has been procedurally defaulted:

> (1) the court must determine that there is a state procedural rule with which the petitioner failed to comply; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) the state procedural rule must have been an adequate and independent state procedural ground upon which the state could rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for his failure to follow the rule and that actual prejudice resulted from the alleged constitutional error.

*Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Whether a state court has actually enforced a procedural sanction depends on whether "the last state court from which the petitioner sought review . . . invoked the stated procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims." *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)). In *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), the Supreme Court held that, where the last state court

decision is silent or unexplained as to its reasons for not granting relief, the federal court may "look through" that judgment and assume that it relied on the last reasoned judgment issued in the course of the petitioner's state appeals. That prior judgment's rationale is then taken as the state court's basis for denying relief. *Id*.

The last state court to review Ivory's postconviction claims was the Michigan Supreme Court. In January of 2004, the Court issued an order stating, in its entirety: "On order of the Court, the application for leave to appeal the August 31, 2003 order of the Court of Appeals is considered and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." This court has previously held that Mich. Ct. R. 6.508(D)(3) is an "independent and adequate" ground to bar review of a petitioner's federal claims. *See, e.g.*, *McFarland v. Yukins*, 356 F.3d 688, 698 (6th Cir. 2004). Part (D) of Rule 6.508, captioned "Entitlement to Relief," first describes the substantive burden a petitioner must meet to qualify for postconviction relief. The rule also contains three subparts that set forth specific procedural requirements. Subpart 6.508(D)(3) in particular prohibits courts from granting relief, absent a showing of cause and prejudice, on the basis of claims that a petitioner could have brought on direct review but in fact did not.

Ivory contends that because the Michigan Supreme Court denied review based on Mich. Ct. Rule 6.508(D) generally—rather than on subpart 6.508(D)(3) in particular—this court cannot adequately determine whether the Michigan Supreme Court actually applied an independent and adequate procedural sanction. Consequently, Ivory argues, this court should not attempt to "guess" what the Michigan Supreme Court might have meant, but should instead determine that Ivory's claims are not procedurally barred.

Ivory's argument relies heavily on this court's ruling in *Abela v. Martin*, 380 F.3d at 921. In that case, the Michigan Supreme Court issued an order substantially similar to the order it handed down in Ivory's case. The court in *Abela* first noted that prior Sixth Circuit decisions have held that a denial of relief based on Mich. Ct. R. 6.508(D) provides an adequate and independent state procedural sanction sufficient to preclude habeas review. *Id.* at 923-24 (citing *Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000), and *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2002)).

Nevertheless, the *Abela* court distinguished *Simpson* and *Makowski* on the ground that, in those cases, the last reasoned state court opinion that referenced anything other than Mich. Ct. R. 6.508(D) had without question denied relief on procedural grounds. *Id.* at 923. The last reasoned state-court opinion issued in *Abela*, in contrast, explicitly denied relief on the merits, stating that the petitioner's motion was "DENIED for lack of merit in the grounds presented." For this reason, the court in *Abela* concluded, the Michigan Supreme Court's general reference to Mich. Ct. R. 6.508(D) should be interpreted as relying on the merits-based portion of the rule, which identifies the petitioner's general burden, rather than on the specific procedural bars set forth in the three subparts of the Rule.

We conclude that Ivory's case is much closer to *Simpson* and *Makowski* than to *Abela*. Never, at any point in Ivory's postconviction proceedings, did a Michigan court address the merits of his ineffective-assistance-of-trial-counsel claim. Instead, the postconviction trial court specifically addressed Ivory's four other grounds for relief and concluded that "[t]he foregoing alleged circumstances are without merit." The court then cited Mich Ct. R. 6.508(D)(3), explicitly stated that "[a]ll of the legal positions submitted by defendant could have been presented to the appellate court in his initial appeal." It then proceeded to deny Ivory's motion in its entirety because he could not demonstrate cause and prejudice for the default. Significantly, the court never addressed the merits of Ivory's ineffective-assistance-of-counsel claim, his fifth ground for relief. Both the Michigan Court of Appeals and the Michigan Supreme Court, as noted above, denied Ivory postconviction relief in one-line orders that cited Mich. Ct. R. 6.508(D).

Ivory makes much of the fact that the postconviction trial court did not specifically address his ineffective-assistance-of-trial-counsel claim, and argues that this alleged oversight requires a determination that the claim was not procedurally defaulted. We agree with Ivory's factual statement, but disagree with his proposed remedy. Regardless of what the state postconviction trial court did or did not do, Ivory concedes that he failed to raise his ineffective-assistance-of-trial-counsel claim on direct appeal. The Michigan appellate courts' one-sentence orders—stating that Ivory "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)"—therefore constitute orders "based on an independent and adequate state procedural rule." *Simpson*, 238 F.3d at 407 (concluding that Mich. Ct. R. 6.508(D) is an independent and adequate procedural bar). We thus turn, in Part II.C below, to the question of whether Ivory has demonstrated "cause and prejudice" that would excuse his procedural default.

## C.     Ivory cannot demonstrate cause and prejudice to excuse the default

In order to excuse the procedural default identified in Part II.B. above, Ivory must demonstrate "good cause" for the default and must show that "actual prejudice resulted from the alleged constitutional error." *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). Ivory asserts two different grounds that he claims establish cause for the default: (1) recently discovered evidence corroborating his ineffective-assistance-of-trial-counsel claim, and (2) the ineffective assistance of his appellate counsel in failing to raise on direct appeal the issue of his trial counsel's ineffective assistance. We will address both of these grounds in turn.

### 1.     *Recently discovered evidence*

Ivory asserts that the ruling of the Michigan State Bar suspending Gordon's license and the admissions by Gordon's counsel at those disciplinary proceedings entitle Ivory to at least an evidentiary hearing on the question of Gordon's effectiveness. But Ivory himself argued, in a grievance filed just one month after his criminal trial, that Gordon's assistance at trial was ineffective for multiple reasons and that Gordon "should be tested for drugs." His September 1998 grievance thus demonstrates that Ivory was aware of both Gordon's allegedly ineffective assistance and his counsel's drug use well in advance of filing a direct appeal. As Ivory acknowledges, the newly discovered evidence he cites simply serves to "corroborate[]" his ineffective-assistance-of-trial-counsel claim. The new evidence cannot, therefore, excuse Ivory's failure to raise the claim on direct appeal because he was obviously on notice of both Gordon's alleged ineffectiveness and the possible reasons for it prior to filing his direct appeal.

### 2.     *Ineffective assistance of appellate counsel*

Whether the allegedly ineffective assistance of Ivory's appellate counsel excuses Ivory's failure to raise the issue of his trial counsel's ineffectiveness on direct appeal presents a more complex question. As this court has held, "ineffectiveness of appellate counsel can suffice to show sufficient cause and prejudice for failure to raise an ineffective-assistance-of-counsel claim." *Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005). Counsel's failure to raise an issue on appeal, however, constitutes ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Id.* Whether raising the issue might have changed the result of the appeal, in turn, goes to the merits of the claim itself. Thus, in order to determine whether the procedural default of Ivory's ineffective-assistance-of-trial-counsel claim may be excused by the ineffective assistance of his appellate counsel, we must examine the merits of his ineffective-assistance-of-trial-counsel claim.

The familiar *Strickland* test governing a claim of ineffective assistance of counsel has two prongs. First, the defendant must demonstrate that counsel's performance fell "below the objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The defendant must then demonstrate that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id*. at 694. We are also mindful, however, of the Supreme Court's explanation that

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* at 697.

Taking *Strickland* to heart, we find no need to delve into Ivory's allegations regarding his counsel's performance. Even if we assume for the sake of argument that Gordon's performance fell below an objective standard of reasonableness, the critical issue regarding Ivory's claim is whether he can demonstrate a reasonable probability that, but for Gordon's alleged unprofessional conduct, the result of the proceedings would have been different. Rather than attempting to meet this test in the first instance, Ivory argues that Gordon's representation was so deficient as to give rise to per se prejudice under *United States v. Cronic*, 466 U.S. 648, 658-61 (1984) (suggesting that there are circumstances when a presumption of prejudice is appropriate, but requiring the defendant in the case before it to demonstrate that his trial counsel had made specific errors). As this court has explained, three types of cases can lead to a presumption of prejudice under *Cronic*:

> The first is the complete denial of counsel, in which the accused is denied the presence of counsel at a critical stage. The second is when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance.

*Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir. 2003) (citations and quotation marks omitted). Ivory's argument focuses on the second type of case, asserting that Gordon failed to subject the government's case to meaningful adversary testing. Such a "constructive denial of counsel is limited to situations involving constitutional error of the first magnitude, which cannot be cured even if no prejudice is shown." *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002).

Ivory relies in part on this court's decision in *Mitchell* to support his claim that Gordon's representation was per se prejudicial. But the court in *Mitchell* presumed that counsel's performance was prejudicial "because [the defendant] was denied the *presence* of counsel during the critical pre-trial stage." 325 F.3d at 742 (emphasis added). The court relied heavily on the fact that counsel had met with Mitchell only once prior to trial for six minutes, and thus effectively made "no effort to consult with the client." *Id*. at 744.

In so holding, *Mitchell* distinguished the earlier case of *Dick v. Scroggy*, 882 F.2d 192 (6th Cir. 1989), which held that defense counsel's meeting with the defendant for approximately 30 to 45 minutes prior to trial precluded a finding of per se prejudice. In the present case, Ivory does not assert that Gordon failed to meet with him. He instead claims that Gordon met with him only twice, failed to provide documents that Ivory requested, and was likely under the influence of drugs. But Ivory concedes that, during these meetings, Gordon discussed with him "what [Gordon] called his 'imperfect self defense' theory." These allegations therefore address the quality of Gordon's pretrial representation, as did the allegations in *Scroggy*; they do not assert a virtual absence of representation that would create per se prejudice.

Similarly, Gordon's alleged shortcomings at trial are not sufficient to create per se prejudice. In *Moss*, 286 F.3d at 860, this court reviewed instances in which counsel had been found to be constructively absent from proceedings and concluded that "we have applied *Cronic* only where the constructive denial of counsel and the associated collapse of the adversarial system is imminently clear." *Id.* at 861 (holding that counsel's failure to cross-examine key state witnesses was not prejudicial per se). Examples of performance giving rise to per se prejudice that are cited in *Moss* include counsel sleeping through critical proceedings, *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001), expressing contempt and "unmistakable personal antagonism" toward the client in the presence of the jury, *Rickman v. Bell*, 131 F.3d 1150, 1156-60 (6th Cir. 1997), and affirmatively declining to present a defense because of an unsound trial strategy, *Martin v. Rose*, 744 F.2d 1245, 1250-51 (6th Cir. 1984).

Ivory attempts to analogize Gordon's alleged drug and alcohol abuse to such cases. The transcript makes clear, however, that Gordon was conscious throughout the proceedings, cross-examined the state's witnesses, moved for a judgment of acquittal, and made a coherent closing argument. Furthermore, though Ivory was charged with first-degree murder, the court ultimately adopted Gordon's argument that the evidence was insufficient to support premeditation and instead convicted Ivory of the lesser offense of second-degree murder. Gordon was thus present at trial and performed rationally on behalf of his client. Although this does not establish that Gordon's performance passes constitutional muster, it does mean that Gordon's performance was not per se prejudicial under *Cronic*. Ivory must therefore demonstrate how Gordon's performance prejudiced him under *Strickland* in order to be entitled to relief.

In this regard, Ivory's claims fall short of the mark. Ivory's own statement to the police conceded that he killed Napier on July 28, 1996. He told the officers that, after Napier said "you don't love me. That's why I gave you AIDS," he simply "lost it." Ivory then "went to the trunk of the car . . . opened up the trunk and got the gun out of the trunk." When Napier "started walking towards [Ivory]" with a "club" car-security device in her hand, Ivory "started shooting her." According to the record, Ivory is five-feet, eleven-inches tall and weighed approximately 245 pounds at the time of the shooting, whereas Napier was five-feet, five-inches tall and weighed 129 pounds. *Ivory*, 2005 WL 1030325, at *1. The district court pointed out that Ivory fired five to seven shots from a distance of 10 to 12 feet, and that Napier died from two gunshot wounds, one to the face and one to the upper left buttock. *Id.* at *5.

Based on these facts, the trial court found that Ivory's claim that he shot Napier—a woman much smaller in stature than himself—in self-defense because she wielded a "club" car-security device was simply not viable. The court, in so ruling, cited both the fact that Ivory himself claimed to have disarmed Napier of the gun earlier in the evening and the fact that Ivory had a duty to retreat in any event. Ivory's present appeal does not assert that any of Gordon's alleged shortcomings, from waiving opening statement to failing to present witnesses, would have undermined this conclusion. In fact, the trial court's conclusion was based on the facts as asserted by Ivory in his statement to the police. Ivory is therefore unable to demonstrate that Gordon's ineffectiveness prejudiced him because he cannot show a reasonable probability that, but for Gordon's failings, the trial court would have adopted his meritless self-defense rationale. *See Strickland*, 466 U.S. at 694.

After disposing of Ivory's self-defense claim, the trial court next determined that convicting Ivory of the reduced offense of voluntary manslaughter instead of second-degree murder was not justified under the circumstances. In drawing this conclusion, the court relied largely on the facts as asserted by Ivory. Although the court expressed doubts as to Ivory's credibility, it nevertheless assumed the truth of his story that, prior to shooting, Napier told Ivory that she had given him AIDS. The court also adopted the version of the shooting asserted by the eyewitness Dwayne Glen—that Ivory already had the gun with him at the time Napier made her AIDS allegation—rather than Ivory's story of retrieving the gun from the trunk of the car before shooting Napier. Glen's version

is actually more favorable to a manslaughter charge than Ivory's version in that Glen's account reduces the time that Ivory would have had to cool down and reflect on Napier's statement.

Nevertheless, the Michigan trial court determined that Napier's statement was insufficient provocation to justify Ivory's subsequent shooting. Ivory again cannot show a reasonable probability that, but for Gordon's alleged shortcomings, the trial court would have resolved this matter differently. As noted above, the trial court in fact accepted the version of the facts asserted by Ivory, and even adopted a contrary but favorable factual conclusion that Ivory had ready access to the gun at the time of the alleged verbal provocation by Napier.

Ivory asserts, in a footnote in his reply brief, that the "'[p]rejudice' in this case results from counsel's failure to competently present Mr. Ivory's provocation defense (on which he bore the burden of proof)." For this proposition, Ivory cites *Commonwealth v. Yates*, 818 N.E.2d 181, 184 (Mass. App. Ct. 2004). But *Yates* simply held that a victim's statement to an assailant that she had given him AIDS rendered provocation a "live issue," so that failing to address it at the defendant's plea colloquy provided grounds to withdraw the plea. *Id.* at 184-85. In the present case, Gordon in fact recognized that provocation was a live issue, he emphasized it at trial, and he highlighted in his closing argument that Napier made Ivory think he "might have some life-threatening disease." Gordon argued that what happened was "obviously a situation that got out of hand," and that, "if [Ivory] had intended to murder [Napier] . . . , he could have done it in [earlier] in that car."

The above analysis demonstrates that, despite Gordon's alleged shortcomings, the trial court actually adopted the factual version of the shooting that was most favorable to Ivory and his provocation defense. Furthermore, Gordon put before the court an argument that those facts demonstrated provocation and justified a reduced verdict of manslaughter. The trial court simply reached a contrary determination that Napier's statement was not an "adequate and reasonable provocation to reduce [the charge] to manslaughter" in Ivory's case. In addition, the Michigan Court of Appeals affirmed on direct review that Napier's alleged provocative statements did not justify a finding of guilt on a reduced charge of manslaughter. *Ivory*, 2005 WL 1030325, at *6-7. Ivory does not specifically assert what additional measures Gordon could have taken to sway the trial court in this regard.

In fact, the only defense witness that Ivory claims should have been called to testify was Pearl Ivory, his mother. The parties stipulated at trial, however, as to what Mrs. Ivory would have said, and Ivory does not now assert that she would have testified any differently. Mrs. Ivory did not witness the incident, and instead only heard shots fired "from down the street somewhere." Her testimony was thus not material to Ivory's claim of self-defense or provocation. So even though the allegations of Gordon's drug use, his lack of trial preparation, and his failure to call witnesses are troubling, Ivory has not shown a reasonable probability that, but for Gordon's unprofessional conduct, the result of the trial would have been any different. This means that Ivory's claim that appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel is without merit, which results in the claim being procedurally barred.

In sum, habeas relief might have been justified if the evidence against Ivory had been substantially weaker than in fact it was, but such is not the case on the record before us. We are all the more confident of our conclusion because of the deference that we are required to give the decision of the Michigan Supreme Court under AEDPA. *See* 28 U.S.C. § 2254(d).

### D.    Ivory is not entitled to an evidentiary hearing

Ivory's final contention is that, even if he cannot demonstrate that he is entitled to habeas relief based on his ineffective-assistance-of-counsel claims, he is entitled to an evidentiary hearing to develop additional relevant facts. The district court denied Ivory's request for an evidentiary

hearing, which we review under the abuse-of-discretion standard. *See Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003).

The Warden asserts that Ivory's lack of compliance with 28 U.S.C. § 2254(e)(2) prohibits him from receiving an evidentiary hearing. Section 2254(e)(2) bars the grant of an evidentiary hearing to a defendant who "has failed to develop the factual basis of a claim in State court proceedings" unless certain exceptions are met. *Id.* As the Supreme Court has explained, "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

The Warden argues that, just as Ivory procedurally defaulted his substantive ineffective-assistance-of-trial-counsel claim by failing to raise it on direct review, § 2254(e)(2) precludes granting Ivory an evidentiary hearing because he failed to seek one on direct review. Ivory responds that § 2254(e)(2) does not bar granting an evidentiary hearing because (1) he sought an evidentiary hearing in state postconviction proceedings and was denied, (2) any default is excused by the ineffective assistance of his appellate counsel, and (3) he is at least entitled to an evidentiary hearing regarding the ineffectiveness of his appellate counsel because that claim is not procedurally defaulted.

Because the sole ground upon which Ivory bases his ineffective-assistance-of-appellate-counsel claim is appellate counsel's failure to raise the claim of ineffective assistance of trial counsel, the two issues are intertwined. We need not ultimately decide whether the bar of § 2254(e)(2) applies to either request, however, because even assuming that it does not, "the fact that [a petitioner] is not disqualified from receiving an evidentiary hearing under § 2254(e)(2) does not entitle him to one." *Bowling*, 344 F.3d at 512. Instead, the Supreme Court recently explained that

> [i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

*Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) (citation omitted).

The Court in *Schriro* held that one of the reasons the lower court erred in granting the habeas petitioner an evidentiary hearing in that case was that the petitioner's allegations of ineffective assistance failed to demonstrate that he had suffered prejudice under *Strickland*. *Id*. at 1942. Although the alleged factual grounds for counsel's ineffectiveness in the present case differ from those underlying the claim in *Schriro*, the same result obtains. Ivory's ineffective-assistance-of-counsel claim fails not because he is unable to substantiate his factual allegations regarding counsel's deficient performance, but because he cannot demonstrate that the deficient performance prejudiced him under *Strickland*. Because none of Ivory's arguments suggest that further factual development would demonstrate such prejudice, an evidentiary hearing is unwarranted.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.