File Name: 12a0415n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 11-1395

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JASON LEE BADGLEY, | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| | ) | |
| SUSAN DAVIS, | ) | **O P I N I O N** |
| | ) | |
| **Respondent-Appellee.** | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge; NORRIS and STRANCH, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Petitioner Jason Lee Badgley appeals the denial

of his petition for a writ of habeas corpus. He stands convicted of murdering his five-week-old

son. The district court denied the writ and granted a certificate of appealability on the single

issue of whether the trial court violated Badgley's right to present a complete defense by refusing

to admit lay testimony regarding his state of mind at the time of the murder. We affirm.

**I.**

Petitioner was convicted in a Michigan court of second-degree murder and first-degree

child abuse of his five-week-old son. Mich. Comp. Laws §§ 750.317, 750.136b(2). The facts

of the murder are not at issue, only the petitioner's state of mind. On the morning of the murder,

Vikki Lee Gohsman, the victim's mother and petitioner's fiancee, left the petitioner with their

son while she ran some errands. While the infant's mother was away, Badgley encountered some difficulty in caring for his son. The baby had been sick and petitioner could not get him to stop crying. Though Badgley's story changed as he was questioned by police, he admitted to pushing the child across the floor with his foot, strangling the infant, and punching him in the back of the head. These attacks resulted in the child's death.

At trial, the petitioner's defense strategy was based on the theory that he did not form the requisite *mens rea* for murder, but only for some lesser form of homicide. To that end, Badgley sought to elicit testimony from Gohsman regarding her opinion as to his state of mind at the time of the incident. The trial court refused to allow Gohsman's opinion on his state of mind when he killed the victim, after Gohsman had left for the morning. The jury convicted Badgley of second-degree murder and first-degree child abuse. The trial court denied Badgley's post-conviction motions for retrial and resentencing. The Michigan Court of Appeals affirmed Badgley's conviction, holding that Gohsman's testimony was properly limited as a lay opinion regarding Badgley's capability to form the intent to kill, a subject about which she was not competent to testify and which is not a valid defense under Michigan law. Badgley, however, argues that he sought to introduce Gohsman's testimony not to demonstrate that he could not form the intent to kill, but that he *did* not. Badgley was denied leave to appeal by the Michigan Supreme Court.

He filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 based on two claims: 1) that the jury instructions did not include lesser included offenses in violation of due

process; and 2) that the trial court's exclusion of Gohsman's testimony regarding petitioner's state of mind violated Badgley's constitutional right to present a complete defense. The district court denied the writ and granted a certificate of appealability as to the second issue. On that issue, the district court concluded that the excluded evidence was not central to Badgley's defense, and thus his right to present a complete defense had not been violated. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986).[1]

## II.

This court reviews the legal conclusions of a district court's denial of a writ of habeas corpus de novo; we review its factual findings for clear error. *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007). Under the Antiterrorism and Effective Death Penalty Act of 1996, state court determinations of law and fact are entitled to great deference. "An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Ivory*, 509 F.3d at 291.

---

[1] The district court also considered whether the trial court's decision to exclude Gohsman's testimony was in line with Michigan law. However, because federal courts are not empowered to revisit state courts' determinations on matters of state law, and because the district court's holding did not rest on its interpretation of Michigan law, we need not address that issue. *See Bradshaw v. Richey*, 546 U.S. 74, 78 (2005).

**III.**

The Sixth and Fourteenth Amendments grant criminal defendants the right to present a complete defense. *Crane*, 476 U.S. at 690. This right establishes that courts may not "exclude competent, reliable evidence . . . when such evidence is central to the defendant's claim of innocence." *Id.* The district court concluded that the excluded evidence was not central to Badgley's claim of innocence for two reasons: first, it would have added little to the evidence that was admitted; and second, Badgley's attempt to show that he did not intend to kill the victim, even if successful, would not have been sufficient to undercut the *mens rea* requirement of second-degree murder. Either reason is sufficient to affirm the district court's denial of the petition.

The district court found that Badgley's defense "was adequately presented through the testimony of Gohsman and Petitioner's father who testified regarding the stress and circumstances in Petitioner's life. It was also supported by Gohsman's testimony that Petitioner was a good father and loved and cared for his son." The trial court excluded Gohsman's "follow-on" opinion that Badgley did not intend to harm his son. The district court found that the "follow-on" opinion that Badgley did not intend to harm his son was unlikely to be of much help to Badgley because the jury had sufficient evidence to form its own opinion of his state of mind.

To argue that the excluded evidence was central to his case, Badgley relies on *Crane,* in which the United States Supreme Court considered a conviction in which the petitioner had not

been allowed to introduce testimony regarding the conditions in which he had confessed to a murder. 476 U.S. at 685-86. The trial court excluded this testimony finding that it went only to the issue of the voluntariness of the confession, and the judge had already ruled that the confession was voluntary as a matter of law. *Id.* Like the case at hand, *Crane* involved exclusion of testimony that was relevant to an issue that was not available to the petitioner. However, in both cases, the excluded evidence was also potentially important to a different, available issue. In *Crane*, the petitioner wanted to elicit testimony regarding his confession to undermine its credibility, not its voluntariness. Similarly, Badgley sought to elicit Gohsman's testimony as evidence that he *did* not have the intent to murder not to raise the unavailable defense that he *could* not form that intent.

In *Crane*, the Supreme Court concluded that the excluded testimony was central to the petitioner's defense, and held that exclusion of the testimony violated the petitioner's right to present a complete defense. "[S]tripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?" *Id.* at 689. Testimony regarding the circumstances of his confession was the only evidence that the petitioner had to explain that vital question, and without it, he was unable to present his defense. *Id.* Badgley, on the other hand, presented a great deal of evidence that he was a loving father driven to violence by circumstance. The jury could have concluded, based on this evidence, that he did not form the intent to murder. It is the jury's opinion on this matter,

not Gohsman's, that is of central importance. Given the admitted evidence of Badgley's character and circumstances, Gohsman's opinion that Badgley did not form the intent would do little to further convince the jury that he did not intend to kill his son.

**IV.**

The district court also concluded that even if Gohsman testified that she did not believe Badgley intended to kill their son and the jury gave that belief great weight, it would not be sufficient to undermine the *mens rea* requirement of second-degree murder or first-degree child abuse. The *mens rea* requirement of second-degree murder is "the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm . . . [and] [m]alice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. . . . [T]he prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Werner*, 659 N.W.2d 688, 692 (Mich. App. 2002) (internal citations and quotation marks omitted). Both the Michigan Court of Appeals and the district court held that punching, strangling, and kicking a five-week old are intentional actions, and to do them is to disregard severe consequences for the victim. Regardless of whether petitioner intended for the baby to die, Badgley did intentionally punch, kick, and strangle him. These intentional acts are sufficient to satisfy the *mens rea* requirement of second-degree murder regardless of whether the petitioner intended that these acts result in the victim's death. The *mens rea* requirement of first-degree child abuse is that the defendant "knowingly or intentionally causes serious physical

. . . harm to a child." Mich. Comp. Laws § 750.136b(2).  Though Gohsman's opinion may have been relevant to the theory that petitioner did not intend to kill his son, it could not have demonstrated that he did not *know* that punching, kicking, and strangling an infant could result in serious physical harm.

## V.

Because the excluded testimony was not central to petitioner's defense and could not have undercut the *mens rea* requirements of second-degree murder and first-degree child abuse, the judgment of the district court is **affirmed**.